UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KARL B. HENDERSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 1:18-cv-00020-JRS-MPB |
|  | ) |  |
| CITY OF INDIANAPOLIS, et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**Order on Motion for Summary Judgment**

Plaintiff Karl B. Henderson brings this action under 42 U.S.C. § 1983, alleging that Defendants City of Indianapolis (the "City") and Officer Justin Baker violated his rights under the Fourth Amendment in conducting an unreasonable seizure and false arrest. He also asserts a state-law claim for false arrest. Defendants move for summary judgment on the false arrest claims, arguing that Officer Baker is entitled to qualified immunity on the federal claims because he had probable cause to arrest Henderson for public intoxication, and even if Officer Baker did not have probable cause for the arrest, he had arguable probable cause. Defendants also contend that the City is entitled to summary judgment on Plaintiff's state-law claim under *respondeat superior* because its officers had probable cause to arrest him.

As a general rule, a party seeking summary judgment must raise arguments in support of its motion in its opening brief to provide the non-movant a fair opportunity to respond. *See, e.g.*, *Ramos v. City of Chicago*, 716 F.3d 1013, 1017 (7th Cir. 2013). Defendants did not address whether the officers' initial investigatory stop was

reasonable. The arguments in the motion focus on the defendants' conduct in arresting Henderson. However, Plaintiff's response brief addresses the investigatory stop, and Defendants' reply does as well. Regardless, the Court finds there is a genuine issue of material fact regarding whether the investigatory stop was reasonable. The Court rules as follows:

## I. Background

In the early morning hours of October 28, 2016, Officer Baker was working a late shift that ended at 6 a.m. for the Indianapolis Metropolitan Police Department ("IMPD"). (Baker Dep. 12, [ECF No. 30-1 at 9](#).) At approximately 4:39 a.m., he responded to a dispatch report of a white male in a trench coat with a gun acting strangely in a McDonald's parking lot near County Line Road and Madison Avenue in Indianapolis. ([ECF No. 30-1 at 10](#).) Officer Baker did not hear any explanation of what was meant by "acting strangely." He drove to this area to search for the suspect. ([ECF No. 30-1 at 11](#).)

Officer Ryan Lundy advised other officers that he observed someone matching the suspect's description near a Chase Bank at County Line Road and US 31 "hiding behind a telephone pole …. " (ECF N0. 30-1 at 11, 27-28.) Officer Baker drove toward Officer Lundy's location and saw Officer Lundy walking west across US 31 from a Speedway gas station toward a shopping plaza. ([ECF No. 30-1 at 11](#).) Officer Baker also saw Henderson stumble onto US 31 while walking on the opposite side of the street. ([ECF No. 30-1 at 18](#).)

Officers detained Henderson at 4:52 a.m. and then Officer Baker approached Henderson and retrieved his firearm. ([ECF No. 30-1 at 14](#).) Henderson was placed in handcuffs for officer safety and *Mirandized*. ([ECF No. 39-1 at 15-16](#).) Officer Baker believed that Henderson was a threat to officer safety because it was the middle of the night, officers had received reports of an armed male acting strangely, Henderson was hiding behind a pole when he was identified by Officer Lundy, and numerous businesses had been robbed in the area around that time. ([ECF No. 30-1 at 16](#).)

The officers began speaking to Henderson, and Officer Baker, who has been trained in field sobriety tests and Advanced Roadside Impairment Detection, observed that Henderson appeared intoxicated. ([ECF No. 30-1 at 17](#).) Officer Baker believed Henderson was intoxicated because he had slurred speech, an odor of alcoholic beverages on his person, and red, glassy bloodshot eyes. In addition, he was unsteady on his feet and while sitting down, demonstrated an inability to answer some of the officers' questions, and took a long time to answer other of their questions. ([ECF No. 30-1 at 17](#).)

The officers asked Henderson where he was headed, where he lived, how he planned to get home, and what he was doing out at four in the morning. ([ECF No. 30-1 at 19](#).) Henderson was uncooperative. ([ECF No. 30-1 at 18](#).) For example, when asked if he lived in the area or if he was staying with a friend or at a hotel, Henderson answered, "all of these." ([ECF No. 30-1 at 19-20](#).) Officers attempted to identify someone they could call to come get Henderson, even trying to identify someone in his chain of command (he was in the U.S. Army and assigned to Camp Atterbury,

3

Indiana), but Henderson was either unable or unwilling to provide the officers with this information.(ECF No. No. 30-1 at 22.)

After questioning Henderson for approximately 18 minutes and exhausting all means the officers could think of to try to get Henderson home, Officer Baker decided to arrest Henderson. ([ECF No. 30-1 at 25](), 35-36.) Officer Baker arrested Henderson for public intoxication because Baker believed that was the crime that Henderson was committing. ([ECF No. 30-1 at 23]().) Officer Baker believed that Henderson was a danger to himself because he had stumbled onto US 31, Baker believed Henderson was a threat to the officers and that he had breached the peace and harassed, annoyed, or alarmed people earlier that night based on the information Baker had received that a man with a gun was acting strangely. ([ECF No. 30-1 at 7-8]().)

## II. Discussion

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *[Giles v. Godinez](), 914 F.3d 1040, 1048 (7th Cir. 2019)*, *petition for cert. filed*, (U.S. June 3, 2019). A court must draw all reasonable inferences in favor of the non-movant. *[Anderson v. Liberty Lobby, Inc.](), 477 U.S. 242, 255 (1986)*.

The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *[Celotex Corp. v. Catrett](), 477 U.S. 317, 322 (1986)*. If the non-movant fails to establish an essential element of his case, there is a complete failure of proof, and the movant is entitled to judgment as a matter of law. *[Id. at 323]()*. The non-

movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see also Giles,* 914 F.3d at 1048 (stating that the non-movant must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture"). Where the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

Defendants contend that Officer Baker is entitled to qualified immunity on Henderson's false arrest claim because he had probable cause, or at least arguable probable cause, to arrest Henderson. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna,* —— U.S. ——, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). "[Q}ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct.at 308 (internal quotation marks and citation omitted). Thus, "[a] state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Lovett v. Herbert,* 907 F.3d 986, 991 (7th Cir. 2018) (alteration in original) (quoting *Kemp v. Liebel,* 877 F.3d 346, 350 (7th Cir. 2017)). To determine whether a right was clearly established at the time of the challenged conduct, courts examine "whether it would be clear to a reasonable official that his or her conduct

was unlawful in the situation." *McComas v. Brickley,* 673 F.3d 722, 725 (7th Cir. 2012) (quoting *Carvajal v. Dominguez,* 542 F.3d 561, 566 (7th Cir. 2008)). Courts "have discretion to choose which prong to address first." *Lovett*, 907 .3d at 992.

The Fourth Amendment protects against "unreasonable . . . seizures." U.S. Const. amend. IV. Officers need not have probable cause to detain a person for a brief investigatory stop. Under *Terry v. Ohio,* 392 U.S. 1 (1968), such a stop is permissible as long as the officers have reasonable articulable suspicion, supported by specific and articulable facts, that criminal activity may be afoot. *Ramos v. City of Chicago,* 716 F.3d 1013, 1017 (7th Cir. 2013). This standard is less demanding than the probable cause standard needed for an arrest; it "requires more than an unparticularized hunch but less than a probability or substantial chance that criminal activity exists." *Id.* "Before law enforcement may stop a person based on an anonymous tip, reasonable suspicion typically "requires that [the] tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."' *United States v. Lopez,* 907 F.3d 472, 480 (7th Cir. 2018) (alteration in original) (quoting *Florida v. J.L.*, 529 U.S.266, 272 (2000)).

In responding to the summary judgment motion, Henderson argues that the officers did nothing to corroborate the tips communicated to them from dispatch, and the tips contained no assertion of criminal conduct or illegality. He submits there is no evidence in the record to raise a reasonable inference of criminal activity. Defendants' reply argues that Officer Baker had reasonable suspicion based on that following facts: it was the middle of the night, the officers had received reports of an armed

6

male acting strangely, Officer Lundy reported that Henderson was hiding behind a pole when he was identified, and around that time, several businesses in the area had been robbed around that time.

"When more than one police officer is involved in the reasonable-suspicion analysis, courts consider their collective knowledge." *United States v. Street*, 917 F.3d 586, 596 (7th Cir. 2019). "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer . . . even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). To rely on the collective knowledge doctrine, "(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Street*, 917 F.3d at 596–97.

In arguing that Officer Baker had reasonable suspicion, however, Defendants emphasize his knowledge that Henderson was hiding behind a pole when first identified as the suspect. (Reply Brief Support Mot. Summ. J. 5, ECF No. 41) (asserting that "suspects that are hiding behind poles in parking lots at 5 a.m. do garner reasonable suspicion that they are committing or have committed a crime").) A suspect's attempt to evade law enforcement may provide reasonable suspicion so as to justify a *Terry* stop. *See, e.g., D.Z. v. Buell*, 796 F.3d 749, 755 (7th Cir. 2015) (concluding officer had

7

reasonable suspicion to stop suspect that matched the description of a burglar where the suspect was in the vicinity of the burglary and the officer reasonably believed suspect had tried to evade police). Officer Lundy, who was the first officer on the scene, reported that Henderson was hiding behind a pole. While Officer Baker's reliance on that report may have been reasonable, evidence in the record raises a dispute of fact over whether Officer Lundy's report was accurate and based on the facts. When asked at his deposition whether he was hiding behind a pole, Henderson answered, "No." (Henderson Dep. 109, [ECF No. 36-1 at 109](#).)

Thus, there is a dispute at least as to whether Henderson was hiding behind a pole when Officer Lundy first spotted him, or whether Officer Lundy's report that Henderson was hiding behind a pole was false. When the report that Henderson was hiding behind a pole is eliminated, *see, e.g.*, [*Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir. 2012)](#) (evaluating whether probable cause would have existed absent false or misleading statements), the remaining facts known to the officers collectively and to Officer Baker in particular—it was late at night, a man in a trench coat had a gun and had been acting "strangely," Henderson matched the suspect's general description, and businesses in the area had been robbed at some other time—did not establish reasonable suspicion to stop Henderson. A genuine issue of material fact exists as to whether Officer Baker had reasonable suspicion to conduct a *Terry* stop of Henderson and whether Officer Baker violated Henderson's Fourth Amendment right to be free from an unreasonable seizure. Where there is a factual dispute bearing on the qualified immunity analysis, "a trial is required before a determination can be

made as to whether [the defendant] is entitled to qualified immunity." *Chelios v. Heavener,* 520 F.3d 678, 692 (7th Cir. 2008). Therefore, even if Defendants' summary judgment motion had addressed Henderson's unreasonable seizure claim arising from the initial stop, summary judgment would still be inappropriate.

Henderson's false arrest is a different matter. Probable cause is a bar to a Fourth Amendment claim for false arrest. *Muhammad v. Pearson,* 900 F.3d 898, 907 (7th Cir. 2018). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Id.* at 908 (quotation and citation omitted). Probable cause is an objective standard that "relies on the common-sense judgment of the officers based on the totality of the circumstances." *Id.* (quotation and citation omitted). When a defendant raises qualified immunity as a defense to a false-arrest claim, the court determines whether "the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed," *Fleming v. Livingston Cty., Ill.,* 674 F.3d 874, 878 (7th Cir. 2012) (quoting *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998))—that is, whether there is "arguable probable cause," *McComas,* 673 F.3d at 725 (in the context of a wrongful arrest, whether it would be clear to a reasonable official that his conduct was unlawful "turns on whether the arresting officer had 'arguable probable cause'") (quoting *Jones v. Clark,* 630 F.3d 677, 684 (7th Cir. 2011)). "Arguable probable cause

9

exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest." *Id.*

Officer Baker arrested Henderson for public intoxication. Indiana law makes it a crime "for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . . , if the person: (1) endangers the person's life; . . . or (4) harasses, annoys, or alarms another person." Ind. Code § 7.1-5-1-3(a). Indiana law defines "intoxicated" as "under the influence of alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "[C]ommon indicia of intoxication include '(1) the consumption of [a] significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech.'" *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 (7th Cir. 2013) (quoting *Fought v. State,* 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)). "'[I]indicators [of intoxication] are well within the experience of the average adult,' making it a proper subject for lay opinion testimony." *Johnson v. Rogers*, No. 1:16-cv-02705-JMS-MPB, 2019 WL 203115, at *8 n.1 (S.D. Ind. Jan. 15, 2019) (quoting *Mowrey v. City of Fort Wayne*, 2013 WL 6512664, at *6 (N.D. Ind. 2013)) and citing Fed. R. Evid. 701), *appeal filed* (7th Cir. Feb. 28, 2019) (No. 19-1366).

Officer Baker testified that he believed Henderson was intoxicated because he had slurred speech, an odor of alcoholic beverages on his person, and red, glassy bloodshot eyes; he was unsteady on his feet and while sitting down; and he demonstrated an

10

inability to answer the officers' questions and took a long time to answer questions. (Baker Dep. at 20-21, ECF No. 30-1 at 17-18.) Henderson himself testified that he may have smelled like alcohol because he wears cologne that smells like alcohol, and he said that "[e]veryone says I slur my speech." (Henderson Dep. at 121-22, 200, ECF No. 30-5 at 12, 19.) The undisputed evidence establishes that Office Baker believed, and a reasonable officer could have believed, that Henderson smelled like alcohol and had slurred speech at the time of his arrest. Further, Officer Baker testified that the officers asked Henderson a lot of questions, but his answers were not responsive, and he was uncooperative. (Baker Dep. at 21-22, ECF No. 30-1 at 19-20.) Similarly, Henderson testified that after he was *Mirandized*, he did not speak to the officers anymore. (Henderson Dep. at 117, ECF No. 30-5 at 7-8.) Thus, the undisputed evidence raises an inference that Henderson had difficulty answering the officers' questions and was not cooperative. The undisputed evidence further establishes that Henderson had red, glassy and bloodshot eyes and was unsteady on his feet and while sitting down. Given that the evidence establishes that Henderson demonstrated several indicia of intoxication, Officer Baker had probable cause to believe that Henderson was intoxicated during their encounter.

Furthermore, Officer Baker had probable cause to believe that Henderson had endangered his life by stumbling into Highway US 31. And, based on the calls to report a man acting strangely with a gun and Officer Lundy's observation that Henderson matched the suspect's description, Officer Baker also had probable cause to believe that Henderson had harassed, annoyed, or alarmed another person.

11

Therefore, the undisputed facts establish that Officer Baker had probable cause to arrest Henderson for public intoxication in violation of Indiana law. And even if probable cause to arrest Henderson for public intoxication did not exist, Officer Baker had "arguable probable cause" to arrest Henderson. As noted, "[a]rguable probable cause exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest." *McComas*, 673 F.3d at 725. Given that, among other indicia of intoxication, Henderson smelled of alcohol, had slurred speech, was unsteady on his feet and sitting, and had stumbled into the highway, a reasonable officer could have mistakenly believed he had probable cause to arrest Henderson.

The existence of probable cause "is an absolute defense" to both federal and state claims based on a wrongful arrest. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). The probable cause standard under Indiana law is akin to the federal standard: "Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense." *Tallman v. State*, 13 N.E.3d 854, 857 (Ind. Ct. App.2014) (quotation and citation omitted). As discussed, Officer Baker had probable cause to believe that Henderson was committing the crime of public intoxication under Indiana law. The claim against the City is brought under *respondeat superior*, under which the City as employer is liable for the tortious acts of its employee committed within the scope of employment. See *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009) (citing *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). Under Indiana law, summary

12

judgment in favor of the employee on the underlying tort claim necessitates judgment in favor of the employer under *respondeat superior*. *Id.* Because the officers are not liable to Henderson on his false arrest claim, the City is entitled to summary judgment on his false arrest claim as well.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment ([ECF No. 29](#)) is **granted** as to the false arrest claims and **denied** as to the claims that Defendants violated Plaintiff's Fourth Amendment rights in the initial investigatory stop.

This case remains set for jury trial on September 23, 2019, and for a final pretrial conference on August 22, 2019. A separate order setting pretrial filing deadlines will be issued.

**SO ORDERED.**

Date: 7/26/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by the Court's CM/ECF system to all registered counsel of record