UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KARL B HENDERSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:18-cv-00020-JRS-MPB |
| CITY OF INDIANAPOLIS, et al. | ) |
| Defendants. | ) |

**Order on Motion to Reconsider**

Karl B. Henderson sued the City of Indianapolis (the "City") and Officer Justin Baker under 42 U.S.C. § 1983, alleging they violated his rights under the Fourth Amendment and state law in connection with his arrest. Defendants moved for summary judgment, arguing that Officer Baker was entitled to qualified immunity on the federal claims because he had probable cause to arrest Henderson for public intoxication, and even if Officer Baker did not have probable cause for the arrest, he had arguable probable cause. Defendants also argued that the City was entitled to summary judgment on the state-law false-arrest claim on the basis of *respondeat superior*. The Court granted summary judgment as to the false arrest claim and denied summary judgment as to the claim based on the initial *Terry* investigatory stop. (ECF No. 44.) Defendants filed a Motion to Reconsider, which has been fully briefed. A familiarity with the Order on Summary Judgment ("Summary Judgment Order") (ECF No. 44) is assumed.

## Background

At approximately 4:39 a.m. on October 28, 2016, Officer Baker of the Indianapolis Metropolitan Police Department ("IMPD") responded to a dispatch report of a white male in a black trench coat carrying a gun and acting strangely in a McDonald's parking lot near County Line Road and Madison Avenue in Indianapolis. (Baker Dep. 13, ECF No. 30-1.) Officer Baker did not hear any explanation of what was meant by "acting strangely." (Baker Dep. 13–14, ECF No. 30-1.) Officer Baker drove to the area to search for the suspect. (Baker Dep. 14, ECF No. 30-1.)

Officer Ryan Lundy, who was also responding to the dispatch, was the first to see Henderson. (Baker Dep. 14, ECF No. 30-1.) Officer Lundy advised other officers, including Officer Baker, via his radio that Lundy had observed someone matching the suspect's description near a Chase Bank at County Line Road and US 31 "hiding behind a telephone pole . . . ." (Baker Dep. 14, 19, 30–31, ECF N0. 30-1; Police Report 2, ECF No. 30-4.) Officers detained Henderson at 4:52 a.m. and Officer Baker approached Henderson. (ECF No. 30-1 at 14.) Officer Baker never saw Henderson in the vicinity of a telephone pole. (Baker Dep. 31, ECF No. 28.) Henderson was placed in handcuffs for officer safety and *Mirandized*. (ECF No. 39-1 at 15–16.) At the time of the stop, Officer Baker knew that it was the middle of the night, officers had received reports of an armed male acting strangely, Henderson was hiding behind a pole when he was identified by Officer Lundy, and numerous businesses had been robbed in the area around that time. (Baker Dep. 19, ECF No. 30-1 at 16.)

## Discussion

Motions to reconsider summary judgment rulings are governed by Rule 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [summary judgment motion]."). District courts often apply the Rule 59(e) standard to Rule 54(b) motions, *see, e.g.*, *Tesler v. Miller/Howard Invs., Inc.*, Case No. 1:16-cv-00640-TWP-MPB, 2019 WL 1003334, at *2 (S.D. Ind. March 1, 2019); however, "a motion to reconsider an interlocutory order may be entertained and granted as justice requires," *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F. Supp. 1154, 1160 (N.D. Ind. 1995); *see also Frazee v. Dearborn Cty. Sheriff's Dep't*, No. 4:16-cv-00005-SEB-DML, 2018 WL 4680156, at *1 (S.D. Ind. Sept. 28, 2018) (noting that motions to reconsider are rarely granted and are limited to cases where "the court has 'patently misunderstood a party,' has rendered a decision outside the issues presented to it, or has made an error 'not of reasoning but of apprehension'") (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). This is such a case.

As noted in the Summary Judgment Order, "Defendants did not address whether the officers' initial investigatory stop was reasonable." (Order 1–2, ECF No. 44.) Nor did they specifically address whether Officer Baker was entitled to qualified immunity on a claim based on the initial stop. The likely reason they did not was because

the Complaint did not clearly state such a claim. In drafting the Summary Judgment Order, the Court read the Complaint quite broadly to encompass all possible stages of a seizure based on the Complaint's assertion that Officer "Baker's acts and omissions constitute an unreasonable seizure in violation of the Fourth Amendment." (Compl. ¶ 20, ECF No. 1.) But such a broad reading was not required, and the Complaint sets the stage for a more limited interpretation by asserting that "this lawsuit seeks redress against police officers who falsely arrested Plaintiff in violation of the Fourth Amendment." (Compl. ¶ 1, ECF No. 1.)

By failing to file a Statement of Claims in accordance with the Case Management Plan, Henderson deprived Defendants and the Court of the needed clarity as to the claims of the Complaint. As the Chief Judge of this district court has explained:

> The Statement of Claims requirement in the Uniform Case Management Plan represents the Court's effort to prevent parties from presenting "moving targets" to unfairly avoid summary judgment. The Statement of Claims is to be filed following the close of and as informed by liability discovery, but before summary judgment motions are filed. The Statement of Claims should provide each party with a clear idea of the other's legal theories, enabling the parties to directly address one another's positions.

*Harris v. Carrier Corp.*, No. 1:15-cv-01952-JMS-MJD, 2017 WL 4037658, at *2 (S.D. Ind. Sept. 13, 2017) (citations omitted). Henderson acknowledges that he did not file the Statement of Claims, (Resp. Mot. Reconsider 2, ECF No. 62), required by the Case Management Plan,[1] (Order on Case Management Plan, 4, § IV(B), ECF No. 15).

---

[1] Future compliance with Case Management Plan's requirements is expected. A party with the burden of proof must "file a statement of the claims or defenses it intends to prove at trial, stating *specifically* the legal theories upon which the claims or defenses are based." (*See* Case Management Plan, § IV.B.)

4

Henderson did not provide Defendants with fair notice that he was asserting a *Terry* stop claim, and Defendants, understandably, did not address the initial investigatory stop in their opening brief in support of their summary judgment motion. All of this would have been moot, of course, if the Court had correctly applied the law to the summary-judgment evidence. It did not, as explained below.

Qualified immunity shields government officials from civil liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). "A public official defendant is entitled to qualified immunity unless two disqualifying criteria are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation." *Day v. Wooten*, No. 19-1930, 2020 WL 113136, at *5 (7th Cir. Jan. 10, 2020).

The Court's qualified immunity "analysis hinges on whether reasonable officers under the circumstances would know their conduct violated a clearly established right." *Id.* at *4; *see also Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) ("The pressing question . . . is whether a reasonable officer could have believed [the stop] was lawful, in light of the clearly established right . . . and the information [the officer]

5

possessed at the time [of the stop].")·  Qualified immunity "is an affirmative defense, and once raised, the plaintiff bears the burden of defeating it[.]" *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).

*D.Z. v. Buell*, 796 F.3d 749 (7th Cir. 2015), provides guidance. In that case, the Seventh Circuit addressed whether a police officer was entitled to qualified immunity because he had arguable probable cause to arrest the plaintiff. The court explained that "even if probable cause is lacking with respect to an arrest, an officer is entitled to qualified immunity if his subjective belief that he had probable cause was objectively reasonable." *Id.* at 755. Thus, "when a defense of qualified immunity has been raised, we ask whether 'the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed.'" *Id.* (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (1998)).

In the initial denial of summary judgment, the Court found a genuine issue of material fact "as to whether Officer Baker had reasonable suspicion to conduct a *Terry* stop of Henderson and whether Officer Baker violated Henderson's Fourth Amendment right to be free from an unreasonable seizure." (Summary Judgment Order 8, ECF No. 44.) But Defendants had sought summary judgment on qualified immunity grounds. Thus, the appropriate inquiry was not only whether the officer had reasonable suspicion, but also, even if he did not, whether a reasonable officer could have mistakenly believed that he had reasonable suspicion to stop Henderson

6

in light of the information that Officer Baker had at the time of the stop. The appropriate conclusion to this latter question based on the record before this Court is "yes."

This Court observed that "Officer Baker's reliance on [Officer Lundy's] report [that Henderson had been hiding behind a telephone pole] may have been reasonable," but found disputed facts regarding whether Henderson was hiding behind a telephone pole when Officer Lundy first spotted him . . . . (Summary Judgment Order 8, ECF No. 44.) However, whether Henderson was, in fact, hiding behind a telephone pole is immaterial for qualified immunity purposes. What matters is whether Officer Baker had reason to believe, based on the information he had at the time of the stop, that the stop was lawful. Officer Baker did.

Henderson argues that Officer Lundy's report that Henderson was hiding behind a pole is not supported by the facts. Henderson points to Officer Baker's testimony that he did not observe Henderson behind a pole; that Baker was unsure if Henderson knew there were officers on the scene to hide from; and that when Baker first observed Henderson, the latter was walking down the street. (Resp. Defs.' Mot. Reconsider 3 (citing Baker Dep. 16, 13), ECF No. 62.) But none of these facts contradicts Officer Lundy's report of having seen Henderson hiding behind a pole. While Henderson argues that the record is unclear that Officer Lundy told Baker before the stop that Lundy had seen Henderson behind a pole, (Resp. Defs.' Mot. Reconsider 3, ECF No. 62), Henderson has presented no evidence to dispute that fact. Nor has Henderson presented any evidence to raise a reasonable inference that Officer Baker had any reason not to believe Officer Lundy's report. And what matters is not whether

7

Officer Lundy's report was false, but whether Officer Baker could reasonably rely on that report.

In denying summary judgment, the Court manifestly erred by ending its analysis at its conclusion that "[a] genuine issue of material fact exists as to whether Officer Baker had reasonable suspicion to conduct a *Terry* stop of Henderson . . . ." (Summary Judgment Order 8, ECF No. 44.) This Court never reached the second question of the qualified-immunity analysis: whether a reasonable officer could have mistakenly believed that he had reasonable suspicion. The Court does so now. And the Court finds that, even absent the report that Henderson was hiding behind a telephone pole, a reasonable officer could have believed that he had reasonable suspicion to conduct a *Terry* stop in light of the information known to Officer Baker at the time of the stop. That information was this: it was late at night (or very early in the morning), a man in a black trench coat carrying a gun had been acting "strangely," Henderson matched the suspect's general description, and businesses in the area had been robbed around that time. Therefore, the Court finds that Defendants' motion to reconsider should be granted and they are entitled to summary judgment on all claims.

## Conclusion

The Motion to Reconsider (ECF No. 77) is **granted**. Defendants are entitled to summary judgment on all of Plaintiff's federal and state-law claims, including the false arrest claims and the claim that Plaintiff's Fourth Amendment rights were violated in the initial investigatory stop.

8

The final pretrial conference and trial setting are vacated and all other pending motions (ECF Nos. 57 & 61) are **denied as moot**. Final judgment will be entered accordingly.

**SO ORDERED.**

Date: 1/27/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by the Court's CM/ECF system to all registered counsel of record